Filed 10/17/14  P. v. Johnson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Trinity)

| | |
|---|---|
| THE PEOPLE, | C074325 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F0015) |
| v. | |
| CLARENCE OLEN JOHNSON, | |
| Defendant and Appellant. | |

Defendant Clarence Olen Johnson was charged with attempted premeditated murder (Pen. Code, §§ 664/187, 1192.7, subd. (c)),[1] assault with a firearm (§ 245, subd. (a)(2)), criminal threats (§ 422), two counts of attempted assault with a deadly weapon (§§ 664/245, subd. (c)), felon in possession of a firearm (former § 12021, subd. (a)), and driving under the influence (Veh. Code, § 23152, subd. (a)), along with personal use of a firearm, armed with a firearm, and three strike allegations (§§ 12022.53, subd. (b),

---

[1]  Undesignated statutory references are to the Penal Code.

1

12022.5, subd. (a)(1), 12022, former subd. (a)(1) & (5), 667, subds. (b)-(i), 1170.12, subds. (a)-(d)).

Defendant entered an *Alford* plea of no contest to assault with a firearm and felon in possession of a firearm, and admitted a personal use of a firearm and a single strike allegation, with a stipulated term of 19 years 4 months; the remaining counts and allegations were dismissed.[2] The trial court denied defendant's motion to withdraw his plea and imposed the stipulated term.

Having obtained a certificate of probable cause, defendant contends on appeal that the denial of his motion to withdraw the plea was an abuse of discretion. We shall affirm.

BACKGROUND

*The Crimes*

On February 1, 2011, defendant threatened his daughter Lindsey Idler's boyfriend Jeffrey Jann with a rifle during an argument between them. Idler tried to intervene; defendant pointed the rifle at her and pulled the trigger, but the weapon jammed.

*Proceedings*

After defendant initially entered a plea of not guilty by reason of insanity (NGI), the trial court ordered defendant evaluated by two psychologists, Dr. Marilyn Wooley and Dr. David Wilson. Dr. Wilson's report stated that during their interview, defendant "was alert and well oriented for time, place, person, and affect." While digressing at times, "for the most part his thought processes were orderly and organized without any indications of thought disorder or psychotic processes." Defendant's "general vocabulary, word use, report of history, and ability to grasp ideas and concepts suggested

---

[2] Pursuant to *North Carolina v. Alford* (1970) 400 U.S. 25 [27 L.Ed.2d 162], a defendant may plead guilty or nolo contendere to take advantage of a plea bargain, while maintaining his or her innocence of the offense.

average to low average mental abilities. He did not demonstrate any obvious defect of memory in an interview situation." Dr. Wilson administered a shortened oral form of the Minnesota Multiphasic Personality Inventory. Defendant's results were "not indicative of any clinical-level mental, emotional, or personality disorder." Dr. Wilson found that defendant "was capable of understanding the nature and quality of his criminal behavior and recognizing that it was morally and legally wrong at the time of the offenses" and concluded that he did not meet the legal test for insanity.

Dr. Wooley reported that defendant "underst[ood] the charges against him and that if convicted he would go to prison." He understood "court proceedings and could advise his attorney in a rational manner. He has been able to review records and communicate to his attorney what is a lie and what isn't. He denies that he has any mental deficiency or dementia.[3] He informed his attorney that he didn't want to use an NGI defense because he isn't 'nuts.' " Dr. Wooley found that defendant "does not appear to suffer from mental defect or disease that would prohibit him from standing trial as evidenced by his understanding of the charges and consequences of conviction, court proceedings, and ability to assist his attorney." Dr. Wooley also found that defendant did not have any "mental impairment or defect that would have rendered him incapable of understanding the consequences of his actions or knowing right from wrong."

The defense commissioned a "Neurocognitive Evaluation" by Dr. David McGee-Williams, a clinical psychologist. Dr. McGee-Williams evaluated defendant for his "judgment, logic and reasoning, and factors which may impair such." He found defendant had an intelligence quotient (IQ) of 84, which put him in the low average range and 14th percentile. His verbal IQ was 92, or 30th percentile, while his performance IQ was "at the 5th percentile in the borderline range." Defendant's processing speed was

---

[3] Defendant was born in 1949 and was 62 when he was examined.

3

"extremely poor at the 4th percentile with an index score of only 73." This, plus his performance on another test indicated that defendant "probably has some significant chronic brain damage." Summarizing his findings, Dr. McGee-Williams opined, "The finding of extremely impaired higher-order cognitive processing coupled with terrible cognitive flexibility, is characteristic of an individual with severely impaired judgment and an inability to think quickly on their feet. In essence, when having to consider multiple factors to a situation, not only is his thinking slow as molasses but his logic and reasoning processes are so flawed as to almost ensure erroneous decisions."

Defendant subsequently withdrew the insanity plea.

Defendant agreed to a negotiated plea on the first day of trial. He initialed and signed the change of plea form which stated the terms of his plea agreement. Among the items initialed by defendant was, "I have discussed the negotiated plea with my attorney and my attorney answered all my questions. I have no other questions I wish to ask my attorney before entering this plea. We have discussed possible defenses and motions and I am convinced it is in my best interest to enter this plea."

At the change of plea hearing, the trial court explained the terms of the plea to defendant and then asked if he was willing to enter into the proposed agreement. Defendant replied, "I'm pleading guilty because I can't prove I'm innocent." Continuing, defendant said, "I'm innocent, but I can't prove it. So I'm pleading guilty because I can do a little bit of time one way, or I can do a whole lot of time another way." The trial court responded, "I understand this is a negotiated plea and that you're doing this as a strategy. Right?" Defendant replied, "I'm not guilty of it, but I've got no choice because I can't prove it." The trial court said, "I understand that. Is this a strategic decision on your part, because you're avoiding a much larger chance of getting convicted, because this is a better way to go because you know precisely how much time you're going to get?" Defendant answered, "Pretty much, yes, sir."

4

Later in the hearing, defendant and counsel expressly waived defendant's rights to jury trial, confrontation, present a defense, and his self-incrimination privilege. Asked if he was entering the plea "freely and voluntarily," defendant said, "I'm entering it because I can't prove I'm innocent." The trial court also asked defendant if he was taking any medication. Defendant said he took heart medication, and it did not affect his ability to make decisions. When the trial court asked if counsel "explained to you things that you needed to have explained," defendant replied, "Yes, sir." Defendant told the trial court he had enough time to talk to counsel about the case and was able to tell him everything he knew about the case. Trial counsel also told the court he had enough time to talk to defendant about the case, and explained to defendant the consequences of entering the plea. The trial court then took defendant's plea.

At a hearing to postpone sentencing, defendant told the trial court, "Your Honor, I figure if I can't prove my innocence one way, maybe I could show you on paper where every one of the witnesses lied and some of them lied numerous times." The trial court told defendant, "I'm afraid, Mr. Johnson, given your plea we're past that stage." Defendant replied, "Really?"

After defendant sent a letter to the trial court seeking to withdraw the plea and defense counsel asked for the appointment of substitute counsel to prepare a motion to withdraw the plea, the trial court appointed substitute counsel to prepare the motion. The subsequent motion to withdraw included a declaration from defendant that he disputed "the facts as outlined in the Sheriff's investigative reports" and "further claims that his plea was not knowing and voluntarily given." The motion then referred to Dr. McGee-William's report and findings, noting its assessment that defendant had brain damage as well as flawed logic and reasoning. The motion concluded that defendant entered into the plea "without understanding his rights or the benefits and risks involved," as he met with counsel in the holding cell shortly before trial was to start, where counsel "presented in a manner that made him believe that he would not receive a defense if the case

5

proceeded to trial." In addition, the motion claimed defendant "had so little understanding of what was going on that he thought the plea form was something he had to fill out so [trial counsel] could get paid."

Substitute counsel presented no additional evidence at the hearing on the motion. Substitute counsel also told the court she "strongly advised Mr. Johnson against bringing the motion, but it was his desire to do so. But it is his position that he did not understand the negotiated settlement." The trial court stated it was the defense's position that Dr. McGee-Williams's evaluation shows defendant could not understand the plea, but it found no basis to conclude that trial counsel failed to inform defendant of the consequences and nature of the plea and therefore denied the motion.

## DISCUSSION

Defendant contends it was an abuse of discretion for the trial court to deny his motion to withdraw his no contest plea. According to defendant, "[t]he undisputed evidence" from his motion shows that "he suffers from significant chronic brain damage that substantially impairs his ability to process information and make decisions with any speed." He claims counsel got him to accept the plea offer on the day of trial even though he continued to assert his innocence. Admitting that his statements at the plea colloquy appear to demonstrate he knew what he was doing, defendant nonetheless claims "it is clear from other statements made subsequently that he did not understand that by entering his plea, he would be completely foregoing his right to contest the charges against him and to challenge the credibility of his accusers." Specifically, defendant notes his attempt to prove his innocence at the hearing to delay sentencing and his claim in the motion to withdraw that he entered the plea because he thought counsel would not fight for him and signing the plea form would allow counsel to be paid.

Section 1018 provides in relevant part that on the application of the defendant at any time before judgment, the court may, "for a good cause shown, permit the plea of guilty to be withdrawn and a plea of not guilty substituted. . . . This section shall be

6

liberally construed to effect these objects and to promote justice." For present purposes, a plea of no contest is considered the same as a plea of guilty. (§ 1016, subd. 3.)

Notwithstanding the statutory directive of liberal interpretation, case law implementing section 1018 establishes a stringent standard for overturning a guilty plea. Courts have stated that " 'pleas resulting from a bargain should not be set aside lightly and finality of proceedings should be encouraged.' [Citation.]" (*People v. Weaver* (2004) 118 Cal.App.4th 131, 146.) And a defendant seeking to withdraw his plea has the "burden to produce evidence of good cause by clear and convincing evidence. [Citation.]" (*People v. Wharton* (1991) 53 Cal.3d 522, 585.) To demonstrate good cause, a defendant must show that his plea was not the product of his free judgment. "Mistake, ignorance or any other factor overcoming the exercise of free judgment is good cause for withdrawal of a guilty plea. [Citations.]" (*People v. Cruz* (1974) 12 Cal.3d 562, 566.)

Appellate review of a trial court's denial of a motion to withdraw a guilty plea is equally stringent. As the Supreme Court explained, a "claim of an erroneous denial of a motion to withdraw a plea is reviewed for abuse of discretion." (*People v. Holmes* (2004) 32 Cal.4th 432, 442-443.) " 'An appellate court will not disturb the denial of a motion unless the abuse is clearly demonstrated.' [Citation.]" (*People v. Wharton, supra,* 53 Cal.3d at p. 585.) In determining whether there has been an abuse of discretion, "a reviewing court must adopt the trial court's factual findings if substantial evidence supports them. [Citation.]" (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254.)

Defendant's argument relies primarily on Dr. McGee-Williams's report, which characterizes defendant as suffering from brain damage which impairs his ability to reason, think on his feet, and make good decisions. As defendant says, "[t]he issue was that appellant was not able to fully appreciate and comprehend the information he had been given in regard to the plea due to his significant chronic brain damage which substantially impaired his ability to process information and make decisions quickly."

7

The competence necessary to plead guilty is the same as the competence required for standing trial, i.e., whether the defendant "has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and has 'a rational as well as factual understanding of the proceedings against him.' [Citation.]" (*Godinez v. Moran* (1993) 509 U.S. 389, 396 [125 L.Ed.2d 330]; *id*. at p. 391.) "In addition to determining that a defendant who seeks to plead guilty or waive counsel is competent, a trial court must satisfy itself that the waiver of his constitutional rights is knowing and voluntary. [Citations.] In this sense there is a 'heightened' standard for pleading guilty and for waiving the right to counsel, but it is not a heightened standard of *competence*." (*Id*. at pp. 400-401, italics omitted, fn. omitted..) Accordingly, "[t]he focus of a competency inquiry is the defendant's mental capacity; the question is whether he has the ability to understand the proceedings. [Citation.] The purpose of the 'knowing and voluntary' inquiry, by contrast, is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision and whether the decision is uncoerced. [Citations.]" (*Id*. at p. 401, fn. 12.)

The McGee-Williams's report was not the only assessment of defendant's mental fitness. Dr. Wooley concluded defendant was competent to stand trial, i.e., he understood the charges against him and court proceedings, and could assist his attorney in preparing his defense. The report also summarized Dr. McGee-Williams's diagnosis of brain damage but still found that defendant "does not appear to suffer from mental defect or disease that would prohibit him from standing trial as evidenced by his understanding of the charges and consequences of conviction, court proceedings, and ability to assist his attorney." Dr. Wilson's report summarized the McGee-Williams report at length, but found defendant's "overall mental impairment is relatively mild."

Although the trial court only indirectly mentioned the McGee-Williams report and did not mention the other two reports, all three reports were part of the record and we presume the trial court considered them. (Evid. Code, § 664.) Taking all three reports

8

into consideration, the trial court could reasonably conclude that defendant was competent to enter his no contest plea, that any brain damage led to no more than relatively mild mental impairment, and his plea was knowing and voluntary. Defendant's comments at the plea colloquy, in which he agreed he was "pretty much" entering the plea because he was avoiding a much larger chance of getting convicted and he knew precisely how much time he would get, demonstrated an understanding of the rights he was waiving, and indicated he had sufficient time to consult with trial counsel. This is strong evidence that he in fact understood the significance and consequences of his plea. Given the strong evidence defendant was competent to enter the plea and that his plea was knowing and voluntary, it was not an abuse of discretion for the trial court to deny defendant's motion to withdraw his plea.

## DISPOSITION

The judgment is affirmed.

    BLEASE    , Acting P. J.


We concur:


    MAURO    , J.


    HOCH    , J.

9